## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYLER THOMSON, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| | ) CASE NO. ___-CV-_____ |
| THE PENNSYLVANIA STATE | ) |
| UNIVERSITY, through its board of | ) COMPLAINT – CLASS ACTION |
| trustees, THE BOARD OF | ) |
| TRUSTEES OF THE | ) |
| PENNSYLVANIA STATE | ) |
| UNIVERSITY, a corporate body, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT – CLASS ACTION

Plaintiff Tyler Thomson ("Plaintiff") by and through undersigned counsel, brings this

action against The Pennsylvania State University ("Defendant" or the "University") on behalf of

himself and all others similarly situated, and makes the following allegations based upon

information, attorney investigation and belief, and upon Plaintiff's own knowledge:

### PRELIMINARY STATEMENT

1. Plaintiff brings this case as a result of Defendant's decision to close campus,

   constructively evict students, and transition all classes to an online/remote format as a

   result of the Novel Coronavirus Disease ("COVID-19").

2. While closing campus and transitioning to online classes was the right thing for

   Defendant to do, this decision deprived Plaintiff and the other members of the Class from

1

recognizing the benefits of in-person instruction, access to campus facilities, student activities, and other benefits and services in exchange for which they had already paid fees and tuition.

3. Defendant has either refused to provide reimbursement for the tuition, fees and other costs that Defendant is no longer providing, or has provided inadequate and/or arbitrary reimbursement that does not fully compensate Plaintiff and members of the Classes for their loss.

4. This action seeks refunds of the amount Plaintiff and other members of the Classes are owed on a pro-rata basis, together with other damages as pled herein.

5. Plaintiff is not suing to recover monies paid by taxes to the University; rather, Plaintiff files suit against The Board of Trustees of The Pennsylvania State University, a corporate body that may be sued, for specific disgorgement of fees and monies paid by students and their parents, guardians, and families for services not received.

## PARTIES

6. Defendant The Pennsylvania State University is a public land-grant research university located in Centre County, Pennsylvania.

7. While the University is part of Pennsylvania's Commonwealth System of Higher Education, it has been established as an independent institution not subject to the Commonwealth's direct control.

8. Instead, the University is governed by its board of trustees, The Board of Trustees of the Pennsylvania State University.

9. The Board of Trustees has been established by charter as a body politic and corporate body with complete responsibility for the government and control of the University.

2

10. The Board is lawfully empowered and able to take by gift, grant, sale or conveyance, by bequest, devise, or otherwise, any estate in any lands, tenements, and hereditaments, goods, chattels, or effects, and at pleasure to alien or otherwise dispose of the same to and for the use and purpose of the said institution. The Board also has the power to sue and be sued, and generally to do and transact all and every business touching or concerning the premises, or which shall be necessarily incidental thereto, and to hold, enjoy, and exercise all such powers, authorities, and jurisdiction as are customary within the colleges within the Commonwealth.[1]

11. Upon information and belief, Defendant has an endowment in excess of $3 Billion.[2]

12. Moreover, upon information and belief, Defendant is eligible to receive federal stimulus under the CARES Act. The Act directs that approximately 14 billion dollars be distributed to colleges and universities based upon enrollment and requires that institutions must use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

13. Upon information and belief, Defendant's allocation of the CARES stimulus will be approximately $55 million.[3]

14. Plaintiff is an individual and a resident and citizen of the state of New Jersey.

15. Plaintiff is currently enrolled as a full time student in Defendant's undergraduate program, studying communications.

---

[1] Act of February 22, 1855, P.L. 46, sec. 3, 24 Purd. Comp. Stat. sec. 2533; Resolution of the Board of Trustees, May 3, 2013)
[2] https://www.pionline.com/article/20181011/ONLINE/181019966/penn-state-endowment-returns-7-8-for-fiscal-year
[3] https://virusinfo.psu.edu/faq/topic/latest-updates

16. Plaintiff has paid substantial tuition for the Spring 2020 semester either out of pocket, with family assistance, or by utilizing student loan financing, or otherwise.

17. There are hundreds, if not thousands, of institutions of higher learning in this country.

18. Some institutions of higher learning provide curriculum and instruction that is offered on a remote basis through online programming which do not provide for physical attendance by the students.

19. Defendant's institution offers in person, hands on curriculum.

20. Plaintiff and members of the Proposed Tuition Class did not choose to attend another institution of higher learning, or to seek an online degree, but instead chose to attend Defendant's institution and enroll on an in-person basis.

21. Common sense would dictate that the level and quality of instruction an educator can provide through an online format is lower than the level and quality of instruction that can be provided in person.

22. Moreover, the true college experience encompasses much more than just the credit hours and degrees.  The college experience consists of:

    i.    Face to face interaction with professors, mentors, and peers;

    ii.    Access to facilities such as computer labs, study rooms, laboratories, libraries, etc;

    iii.    Student governance and student unions;

    iv.    Extra-curricular activities, groups, intramurals, etc;

    v.    Student art, cultures, and other activities;

    vi.    Social development and independence;

    vii.    Hands on learning and experimentation; and

    viii.    Networking and mentorship opportunities.

4

23. Defendant has recognized the inherent inequality between the value of in person and online instruction.

24. Even before the COVID-19 pandemic, Defendant offered an online degree program called its "World Campus" program.

25. Through the World Campus program, Defendant offered a number of undergraduate,[4] master's,[5] and doctoral[6] degrees on a purely online basis.

26. Defendant advertised these online degrees as being equivalent to the degrees earned by students at the physical campus locations:[7]

## We Are Penn State Online

Penn State World Campus offers more than 150 accredited graduate degrees, undergraduate degrees, certificates, and minors. These online programs are taught by the same faculty who teach in the academic colleges at Penn State — your degree or certificate is the same one that our on-campus students receive. Choose from a wide range of topics at all program levels and start earning your Penn State degree or certificate online. Explore available programs by topic area, or proceed directly to the graduate or undergraduate listings.

27. However, Defendant charged significantly lower tuition for the online degrees than for the same corresponding on-campus degree.

28. For example, undergraduate tuition rates at the physical campus locations are as follows:[8]

| Penn State University Park | PA Resident | Non-PA Resident |
|---|---|---|
| Tuition and Fees | $18,454 | $34,858 |

---

[4] https://www.worldcampus.psu.edu/degrees-and-certificates/bachelors-degrees
[5] https://www.worldcampus.psu.edu/degrees-and-certificates/masters-degrees
[6] https://www.worldcampus.psu.edu/degrees-and-certificates/doctoral-degrees
[7]

[8] https://admissions.psu.edu/costs-aid/tuition/

| Penn State Commonwealth Campuses | PA Resident | Non-PA Resident |
|---|---|---|
| Tuition and Fees | $13,342-15,198 | $21,366-24,450 |

29. By contrast, the tuition rates for an undergraduate online degree range from $6,994 to $7,549 for any and all full time online students:[9]

> If you have 59 or fewer credits:
>
> - If you are taking fewer than 12 credits per semester: $576 per credit*
> - If you are taking 12 or more credits per semester (flat rate): $6,994*
>
> If you have 60 or more credits:
>
> - If you are taking fewer than 12 credits per semester: $617 per credit*
> - If you are taking 12 or more credits per semester (flat rate): $7,549*

30. This means that even before the COVID-19 pandemic, Defendant acknowledged the value of an online education being worth between 44% and 80% less than the same degree earned on a physical campus.

31. Plaintiff's education has changed from in-person hands on learning to online instruction.

32. Plaintiff's online instruction is not commensurate with the same classes being taught in person.

33. For example, upon information and belief, a number of classes are not even being streamed live online. Instead, some professors are merely uploading pre-recorded lectures that do not allow for student interaction and, still other professors are merely uploading assignments online with no video instruction at all.

34. In addition to tuition, Plaintiff was required to pay certain mandatory fees, including but not limited to a $265 "Student Fee" and other optional fees including but not limited to a

---

[9] https://www.worldcampus.psu.edu/tuition-and-financial-aid/tuition-estimator

Greek Membership Fee.

35. The student fee is intended to "support student-centered activities, services, facilities and recreation to improve student life."[10]

36. Logically, this fee would be intended to cover such things as student groups and organizations; access to campus wellness and recreation facilities and activities; and other benefits and services that can only be realized by students who are physically present on campus.

37. As a result of being required to leave campus and return home, Plaintiff and other members of the Fees Class no longer have the benefit of the services for which these fees have been paid.

## JURISDICTION AND VENUE

38. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

39. This Court has personal jurisdiction over Defendant because Defendant is domiciled in Pennsylvania and conducts business in Pennsylvania.

40. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and because Defendant is a corporate body domiciled and doing business in this District.

## FACTUAL ALLEGATIONS

41. Upon information and belief, Defendant's Spring term began with the first day of classes

---

[10] https://bursar.psu.edu/fees#Information%20Technology%20Fee

7

on or about January 13, 2020.[11]

42. Upon information and belief, Defendant's Spring term was scheduled to conclude with
    the last day of examinations on or about May 8, 2020 and commencement ceremonies
    through May 10, 2020.[12]

43. Accordingly, Defendant's Spring semester was scheduled and contracted to consist of
    approximately 118 days.

44. Defendant's Spring break began on or about March 8, 2020 and was supposed to end on
    or about March 14, 2020, with in person classes resuming on March 16, 2020.[13]

45. However, as a result of the COVID-19 pandemic, on March 11, 2020, Defendant
    announced that all classes would be changed to remote learning starting March 16,
    2020.[14] All on campus student activities and events were cancelled, and students were
    asked not to return to campus from spring break.[15]

46. On March 13, 2020, the University announced the closure of campus recreational
    facilities.[16]

47. On March 19, 2020, the University announced the closure of all campus libraries.[17]

48. On March 18, 2020, the University confirmed that these cancellations, closures, and
    online instruction would remain in effect through the duration of the Spring semester.[18]

49. Based on the dates set forth above, upon information and belief, Defendant's move to

---

[11] http://www.registrar.psu.edu/academic-calendars/2019-20.cfm
[12] Id.
[13] Id.
[14] https://news.psu.edu/story/611757/2020/03/11/academics/all-penn-state-classes-take-place-remotely-beginning-march-16
[15] Id.
[16] https://news.psu.edu/story/611925/2020/03/13/administration/campus-recreation-facilities-closed-university-park
[17] https://news.psu.edu/story/612397/2020/03/19/academics/university-libraries-closing-all-locations
[18] https://news.psu.edu/story/612155/2020/03/18/academics/penn-state-extends-remote-course-delivery-through-spring-semester

8

online classes and constructive eviction of students on or before March 16, 2020, deprived Plaintiffs and other members of the Classes from access to campus and in person instruction for approximately 47% of the semester for which they had contracted.

50. Nonetheless, Defendant has refused and continues to refuse to offer any pro-rated discount or refund for Spring 2020 tuition.

51. Although Defendant is still offering some level of academic instruction via online classes, Plaintiffs and members of the proposed Tuition Class have been and will be deprived of the benefits of on campus learning as set forth more fully above.

52. Although Defendant has refused and continues to refuse to reduce tuition for Spring semester students, the University has announced that students expecting to take Summer classes in person (who will now be forced to take them online) will see a tuition discount for the Summer term:[19]

> Given the continuing challenge and uncertainty of the coronavirus pandemic and to protect the health of students, faculty and staff, Penn State has made the decision to extend virtual delivery of courses into the summer. Further, the University will adjust tuition for the summer sessions in light of the ongoing pandemic and the persistent fiscal strain it is causing across Pennsylvania and the country.

53. Upon information and belief, the only difference between Defendant's decision to discount online classes for the Summer and not discount online classes for the Spring is that Defendant has already collected tuition for the Spring Semester and the Spring Semester students have no recourse, whereas Defendant has not yet collected tuition for the Summer term and Defendant knows many students will not agree to pay full price

---

[19] https://news.psu.edu/story/615745/2020/04/15/academics/penn-state-continue-remote-learning-online-courses-summer

tuition for online classes during that upcoming term.

54. Likewise, Plaintiff and members of the proposed Fees Class have been and will be

deprived of utilizing services for which they have already paid, such as access to campus

facilities, and other opportunities as described above.

55. Nonetheless, Defendant has refused and continues to refuse to pro-rate or refund any

portion of the mandatory fees set forth herein.

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this action on behalf of himself and as a class action, pursuant to the

provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following

Classes:

### The Tuition Class:

All people who paid tuition for or on behalf of students enrolled in classes at the
University for the Spring 2020 semester who paid for but were denied live in-
person instruction and forced to use online distance learning platforms for the
latter portion of that semester.

### The Fees Class:

All people who paid fees for or on behalf of students enrolled in classes at the
University for the Spring 2020 semester.

57. Excluded from the Classes are The Board of Trustees of The Pennsylvania State

University and any of their respective members, affiliates, parents, subsidiaries, officers,

directors, employees, successors, or assigns; and the judicial officers, and their immediate

family members, and Court staff assigned to this case. Plaintiff reserves the right to

modify or amend the Class definitions, as appropriate, during the course of this litigation.

58. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff

can prove the elements of his claims on a class-wide basis using the same evidence as

10

would be used to prove those elements in individual actions alleging the same claims.

59. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

### Numerosity: Fed. R. Civ. P. 23(a)(1)

60. The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiff is informed and believes there are thousands of members of the Class, the precise number being unknown to Plaintiff, but such number being ascertainable from Defendant's records. Upon information and belief, enrollment at Defendant's University is approximately 90,000 students. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

### Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)

61. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    i.   Whether Defendant engaged in the conduct alleged herein;

    ii.  Whether there is a difference in value between online distance learning and live in-person instruction;

    iii. Whether Defendant breached its contracts with Plaintiff and the other members of the Tuition Class by retaining the portion of their tuition representing the difference between the value of online distance learning and live in-person instruction;

    iv.  Whether Defendant was unjustly enriched by retaining tuition payments of

11

Plaintiff and the Tuition Class representing the difference between the value of
online distance learning and live in-person instruction;

v.     Whether Defendant breached its contracts with Plaintiff and the other members of
the Fees Class by retaining fees without providing the services the fees were
intended to cover;

vi.    Whether Defendant was unjustly enriched by retaining fees of Plaintiff and the
other members of the Fees Class without providing the services the fees were
intended to cover;

vii.   Whether certification of any or all of the classes proposed herein is appropriate
under Fed. R. Civ. P. 23;

viii.  Whether Class members are entitled to declaratory, equitable, or injunctive relief,
and/or other relief; and

ix.    The amount and nature of relief to be awarded to Plaintiff and the other Class
members.

### Typicality: Fed. R. Civ. P. 23(a)(3)

62. Plaintiff's claim is typical of the other Class member's claims because, among other
things, all Class members were similarly situated and were comparably injured through
Defendant's wrongful conduct as set forth herein.

### Adequacy: Fed. R. Civ. P. 23(a)(4)

63. Plaintiff is an adequate Class representative because his interests do not conflict with the
interests of other members of the Class he seeks to represent. Plaintiff has retained
counsel competent and experienced in complex litigation; and Plaintiff intends to
prosecute the action vigorously. The Class's interests will be fairly and adequately

12

protected by Plaintiff and his counsel.

## Superiority: Fed. R. Civ. P. 23(b)(3)

64. A class action is superior to any other available means for the fair and efficient
adjudication of this controversy, and no unusual difficulties are likely to be encountered
in the management of this class action. The damages or other financial detriment
suffered by Plaintiff and other Class members are relatively small compared to the
burden and expense that would be required to individually litigate their claims against
Defendant, so it would be impracticable for members of the Class to individually seek
redress for Defendant's wrongful conduct.

65. Even if Class members could afford individual litigation, the Court system likely could
not. Individualized litigation creates a potential for inconsistent or contradictory
judgments, and increases the delay and expense to all parties and the court system. By
contrast, the class action device presents far fewer management difficulties and provides
the benefits of single adjudication, economy of scale, comprehensive supervision by a
single court, and finality of the litigation.

## Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

66. To the extent that a Class does not meet the requirements of Rules 23(b)(2) or (b)(3),
Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

## Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)

67. The University has acted or refused to act on grounds generally applicable to Plaintiff and
the other Class members, thereby making appropriate final injunctive relief and
declaratory relief, as described herein, with respect to the Class members as a whole.

## FOR A FIRST COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT
### (Plaintiff and Other Members of the Tuition Class)

68. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

69. Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

70. Plaintiff and the Tuition Class entered into contracts with the University which provided that Plaintiff and other members of the Tuition Class would pay tuition for or on behalf of students and, in exchange, the University would provide live in-person instruction in a physical classroom.

71. Plaintiff and other members of the Tuition Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 semester either out-of-pocket or by using student loan financing, or otherwise.

72. The University breached the contract with Plaintiff and the Tuition Class by moving all classes for the Spring 2020 semester to online distance learning platforms, without reducing or refunding tuition accordingly.

73. The University retained tuition monies paid by Plaintiff and other members of the Tuition Class, without providing them the full benefit of their bargain.

74. Plaintiff and other members of the Tuition Class have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the value of the services the tuition was intended to cover, namely live in-person instruction in a physical classroom.

75. As a direct and proximate result of Defendant's breach, Plaintiff and the Tuition Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action,

to include but not be limited to disgorgement of the difference between the value of the online learning which is being provided versus the value of the live in-person instruction in a physical classroom that was contracted for.

**FOR A SECOND COLLECTIVE CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Plaintiff and Other Members of the Tuition Class)**

76. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

77. Plaintiff brings this count on behalf of himself and other members of the Tuition Class.

78. The University has received a benefit at the expense of Plaintiff and other members of the Tuition Class to which it is not entitled.

79. Plaintiff and other members of the Tuition Class paid substantial tuition for live in-person instruction in physical classrooms and did not receive the full benefit of the bargain.

80. Plaintiff and other members of the Tuition Class conferred this benefit on Defendant when they paid the tuition.

81. Defendant has realized this benefit by accepting such payment.

82. Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

83. Equity and good conscience requires that the University return a portion of the monies paid in tuition to Plaintiff and other members of the Tuition Class.

84. Defendant should be required to disgorge this unjust enrichment.

## FOR A THIRD COLLECTIVE CAUSE OF ACTION
## BREACH OF CONTRACT
### (Plaintiff and Other Members of the Fees Class)

85. Plaintiff incorporates by reference all preceding allegations as though fully set forth
herein.

86. Plaintiff brings this count on behalf of himself and other members of the Fees Class.

87. Plaintiff and the Fees Class entered into contracts with the University which provided
that Plaintiff and other members of the Fees Class would pay certain fees for or on behalf
of students and, in exchange, the University would provide services related to those fees,
such as access to student activities, athletics, wellness centers, libraries, etc.

88. Plaintiff and other members of the Fees Class fulfilled their end of the bargain when they
paid these fees for the Spring 2020 semester either out-of-pocket or by using student loan
financing, or otherwise.

89. The University breached the contract with Plaintiff and the Fees Class by moving all
classes for the Spring 2020 semester to online distance learning platforms, constructively
evicting students from campus, and closing most campus buildings and facilities.

90. The University retained fees paid by Plaintiff and other members of the Fees Class,
without providing them the full benefit of their bargain.

91. Plaintiff and other members of the Fees Class have suffered damage as a direct and
proximate result of Defendant's breach, including but not limited to being deprived of the
value of the benefits and services the fees were intended to cover.

92. As a direct and proximate result of Defendant's breach, Plaintiff and the Fees Class are
legally and equitably entitled to damages, to be decided by the trier of fact in this action,
to include but not be limited to disgorgement of the pro-rata amount of fees that was

16

collected but for which services were not provided.

## FOR A FOURTH COLLECTIVE CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Plaintiff and Other Members of the Fees Class)

93. Plaintiff incorporates by reference all preceding allegations as though fully set forth
herein.

94. Plaintiff brings this count on behalf of himself and other members of the Fees Class.

95. The University has received a benefit at the expense of Plaintiff and other members of the
Fees Class to which it is not entitled.

96. Plaintiff and other members of the Fees Class paid substantial student fees for on campus
benefits and services and did not receive the full benefit of the bargain.

97. Plaintiff and other members of the Fees Class conferred this benefit on Defendant when
they paid the fees.

98. Defendant has realized this benefit by accepting such payment.

99. Defendant has retained this benefit, even though Defendant has failed to provide the
services for which the fees were collected, making Defendant's retention unjust under the
circumstances.

100.    Equity and good conscience requires that the University return a pro-rata portion
of the monies paid in fees to Plaintiff and other members of the Fees Class.

101.    Defendant should be required to disgorge this unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of members of the Classes, pray for
judgment in their favor and against Defendant as follows:

17

a.      Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

b.      Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

c.      Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

d.      Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

e.      Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

f.      Scheduling a trial by jury in this action;

g.      Awarding Plaintiff's reasonable attorney's fees, costs and expenses, as permitted by law;

h.      Awarding pre and post judgment interest on any amounts awarded, as permitted by law; and

i.      Awarding such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.


Dated this 30th day of April, 2020

18

Respectfully Submitted,

**CARPEY LAW, P.C.**

_____/s/ Stuart A. Carpey_____
Stuart A. Carpey, #49490
600 W. Germantown Pike, Suite 400
Plymouth Meeting, PA 19462
(610)834-6030
scarpey@carpeylaw.com

**ANASTOPOULO LAW FIRM, LLC**

Eric M. Poulin (*pro hac vice admission pending*)
Roy T. Willey, IV (*pro hac vice admission pending)*
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com

**ATTORNEYS FOR PLAINTIFF(S)**